Hone and others, executors, &c. *vs.* Van Schaick and others.

A testator left seven children, together with a granddaughter, J. K., who was the daughter of a deceased son, and three children of another deceased son, his only heirs at law. By his will he provided for the creation of a trust fund from the bulk of his real and personal estate, the income of which he directed to be divided into nine shares, one share to be paid to each of his seven children, *or their representatives,* one to the said J. K. "*daughter of, and representing his deceased son Philip,*" but *omitting her representatives,* and one to his three grandchildren, "*children of, and representing his deceased son John.*" He directed his executors to take the separate receipts of his sons and daughters for such payments of income, and to make payment to his "*granddaughter J. K.*" for her separate use and upon her receipt. In case of the death of a *daughter* leaving *issue,* prior to the expiration of the trust, her share of the income was to be paid to her husband, if living ; if not, to her children ; but no similar provision was made in case of the death of J. K. The executors were authorized, upon the request of the sons or daughters of the testator, to make advances to his grandchildren, the issue of such sons or daughters, from the capital of the trust fund. The trust was to continue twenty-one years from the date of the will, at the expiration of which the testator directed the trust fund to be divided among his said heirs, naming J. K. as one of them, or their legal representatives. *In the partition* of the fund the will declared that his *granddaughter J. K. was to be considered as standing in the same situation with regard to her own rights and those of her issue, as the daughters of the testator, and all the rules applying to them, their husbands and issue, to be applied to her, her husband and issue.*

By a codicil annexed to the will the testator gave to each of his *grandchildren* living at his death a legacy of $6000, to be paid on their respectively attaining the age of twenty-one, or marrying, whichever event should first take place : such payment to be made in no case without the approbation of the parents of the grandchild, or the survivor of such parents, to be expressed in writing to the executors. At the time of making the will and codicil the testator had several grandchildren under age and unmarried, but his granddaughter J. K. was of age, married, and both her parents were dead.

*Held* 1. That J. K. was not entitled with the other grandchildren to a legacy of $6000 under the codicil. 2. That her children *in esse* at the death of the testator, and being his great-grandchildren, could not take legacies under the denomination of grandchildren as used in the codicil.

The language of a will should be construed according to its primary and ordinary meaning, unless the testator has manifested an intention in the will itself to give it a different signification.

Where a testator in his will makes provision for his daughters, and under that denomination includes a granddaughter the daughter of a deceased son, and

by a subsequent clause or codicil gives a legacy of a certain sum to each of his grandchildren, the latter provision will be held, it seems, to include the children of the granddaughter.

THE questions in this case arose under the will of John Hone, who died at the city of New-York in April, 1832. By a codicil annexed to his will he gave to each of his "*grandchildren*" living at his death the sum of $6000, to be paid to them upon their attaining respectively the age of twenty-one years, or marrying, whichever event should first take place: such payment not to be made without the consent of the parents of the grandchild. Mrs. Joanna Kneeland was a granddaughter of the testator, *but of age,* and *married,* when the will was made, and both her parents were dead. The questions were 1st, whether she took, with the other grandchildren of the testator, a legacy of $6000 under the codicil; and if not, then 2d, whether, under the peculiar provisions of the whole will, her two children *in esse* at the death of the testator were entitled, under the denomination of "*grandchildren*" as used in the codicil, each to a legacy of $6000. The chancellor, before whom the case was heard on appeal from the vice chancellor of the first circuit, held that her children were so entitled, and he reversed the decree of the vice chancellor. See 3 *Barb. Ch. Rep.* 488, where the case is stated at length. From that decree an appealed was taken to this court.

*M. Hoffman,* for appellants.

*Gerardus Clark,* for respondents.

GARDINER, J. The respondents claim that Mrs. Joanna Kneeland, a granddaughter of the testator, is entitled to the legacy provided by the third article of the first codicil, in her *own right* as *granddaughter* of the testator, *or* if not, then that her children are included under the denomination of grandchildren, and that such of them as should be living at his death are each accordingly entitled to a legacy of $6000.

The testator has described the beneficiaries intended by him,

first, as his *grandchildren living* at the *time* of his death ; se‹ condly, by a direction that the legacy should "be paid to them and *each* of them," which applies to each and all of the persons to be benefited, "upon their attaining respectively the age of *twenty-one years*, or *marrying*, whichever event shall first occur." The legatees designated by the testator in the codicil above mentioned, were therefore to be grandchildren living at his death, minors, and unmarried. The subsequent clause of the third article, that "such payment is in no case to be made without the approbation of the parents of such grandchild" to be expressed in writing, also shows who were intended to be benefited, and confirms the construction already suggested.

Mrs. Kneeland, at the date of the will, which was some years previous to the codicil, was of full age, married and without parents. She was a grandchild, living at the time of the death of the testator, but not of the class of grandchildren indicated by the codicil. To hold otherwise, we must reject the subsequent clauses of that instrument, which are co-extensive with and limit the bequests, and which provide that the beneficiaries shall receive the prescribed legacies respectively upon marriage or upon attaining their majority, and upon the approval of their parents or the survivor of them expressed to the executors in writing. We have no such power. Accordingly we all agree that Mrs. Kneeland in her own right has no claim whatever to the legacy in question.

The second and more important question is, did the testator intend to include the children of Mrs. Kneeland under the denomination of "grandchildren?" They did not stand in that relation to the testator. On the other hand, there was a large class of persons when the will was made, and at the time of its republication by the execution of the first codicil, to which the description contained in that instrument was applicable in every particular. We are under no necessity, therefore, of enlarging the meaning of the terms adopted by the testator, in order to give effect to his will or render it sensible. His language should be construed according to its primary and ordinary meaning, unless the testator has manifested his intention in the will itself

to give to it a different and more extended signification. This rule is affirmed by the learned chancellor in his opinion, and according to all the authorities is inflexible. ( *Wigram on Wills, prop.* 1, 2, *and cases p.* 17; *Godfrey* v. *Davis,* 6 *Ves.* 42; *Royle* v. *Hamilton,* 4 *id.* 439.) In *Cutter* v. *Doughty,* (7 *Hill,* 305,) the principle was recognized, although the courts differed in its application. In that case the words of the devise were as follows : " I give to my *grandchildren* and their heirs my said farm as follows, to wit, to the children of my *step-daughter* lot No. 1, to the children of *my daughter* lot No. 2," &c. A subsequent clause provided that, if any of the devisees died without issue, their share was to be divided among the survivors of the testator's children, or *grandchildren.* It was held by the supreme court and the court for the correction of errors, that the testator had denominated the children of his step-daughter *grandchildren,* in the first clause of his will; and by the latter court, in opposition to the chancellor and the supreme court, that they were included under the same denomination in the last clause. That case will control the present, if it can be shown that Mr. Hone has in his will denominated Mrs. Kneeland his *daughter,* or her issue his *grandchildren.*

Neither the will nor codicil furnish evidence of any such intention, that I have been able to discover. The whole instrument seems to have been carefully considered, and is drawn with legal precision. The testator first provides for the creation of a trust fund from the bulk of his real and personal estate. He then, in the 5th clause, enumerates his heirs, and among them Joanna Kneeland wife of Charles Kneeland, *daughter* of and representing his *son* Philip Hone deceased. He then directs that one ninth of the income of the trust fund shall be paid to each of his children, or their legal representatives, and one ninth to his *granddaughter Joanna Kneeland,* omitting her representatives. By the 6th clause, the executors, upon such payment, are to take the separate receipts of his sons and daughters, who are severally named ; and are required to make payment to his *granddaughter* Joanna Kneeland for her separate use and upon her receipt; and to his *grandchildren* John, Em-

ily and Maria, *children* of *his son* John Hone, jr. deceased, upon the receipt of their mother. The 7th clause directs as to the payment of the income of the trust fund in the event of the death of his sons or daughters, or either of them, and prior to the expiration of the trust. It provides, that upon the death of a *daughter* leaving *issue,* her share of the income should be paid to her husband if living, if not, to her children if of age or married, otherwise to their guardians. No allusion is had in this clause to Mrs. Kneeland, her husband, or her children. By the 10th clause, the executors were authorized, upon the request of his sons, their widows, or of his daughters, or their husbands surviving them, respectively, to advance to any of his "grandchildren" the *issue* of *such* his sons and daughters who should be married or attain the age of 21 years, a certain amount from the capital of the fund. This clause was unconditionally repealed by the codicil. The children of Mrs. Kneeland are excluded from the benefit of this last provision by the language of the will, and she could claim nothing in her own right, as grandchild, as she has no parents, was married, and of age at the date of the will. This would have been true even if the 10th clause had not been repealed. The 7th and 10th clauses, it will be observed, relate to payments and advances to be made by the executors prior to the final distribution of the estate. That distribution is provided for by the 8th clause; according to which the trust was to continue for twenty-one years from the date of the will, and the fund was then to be divided by the executors among his said heirs, (Mrs. Kneeland being named as one of them,) or their legal representatives; the representatives to take the share to which the ancestor would be entitled if living.

Thus far, it will be perceived, the will furnishes evidence that the testator not only knew, but carefully distinguished between the different degrees of consanguinity in which the devisees were related to him, and that each is designated, in an appropriate manner. He calls Mrs. Kneeland his *grandchild ;* the children of his deceased son, his *grandchildren,* and the other devisees his sons and daughters, according to the relation they

respectively sustained to him. Again, the interest secured by the will to the issue of the daughters of the testator, and the children of Mrs. Kneeland, were different. Her legal representatives are not mentioned in the 5th and 6th clauses; nor is Mrs. Kneeland, her husband or children included in the 7th. The consequence of this omission would be, that upon the death of Mrs. Kneeland her husband would take nothing by the will; but her share of the income of the trust property would either merge in the general fund, or accumulate for the benefit of her children, and be divided with the capital, at the expiration of the trust, according to the provisions of the 8th clause. There is therefore neither identity of denomination or of interest between the children of Mrs. Kneeland and the grandchildren of the testator, which requires that they should be classed together: so far from it, had the will closed with the 8th clause it would have been sensible, and capable of complete execution, by construing the language according to its popular and ordinary signification.

The ninth clause prescribes certain rules, to be observed by the executors in the partition of the estate, as directed in the preceding article. They are numbered from one to six inclusive. The sixth rule, upon which the respondents place their chief reliance, declares, " That my *granddaughter* Joanna Kneeland, to be considered as standing in the same situation, with *regard* to her own *rights* and those of her issue, as my daughters; and all the *rules* applying to them, their husbands, and issue, to be applied to her, her husband and issue." This direction is limited to a single object, the ultimate division of the estate. This is apparent from the rule itself; and is placed beyond doubt by the explicit declaration of the testator, " that in order to carry such *partition* into effect, I direct that my executors, in *making* the *same*, observe the following rules." It does not follow, that because the testator provides for the final distribution of his estate in a particular manner, he therefore intended that a rule prescribed for that purpose should control other dispositions of his property which were to take effect prior to that event. On the contrary, it is believed that the applica-

tion of rules framed by the testator for a special purpose, to different subjects, although embraced in the same will, would violate the plainest principles of legal criticism. And yet it is by this process that a grandchild is made a daughter, and the children *of a* grandchild the issue of a daughter.

But there is another answer. The 6th rule will not admit of the construction claimed by the respondent. It contains a description of the persons or devisees who are to share in the division of the trust fund, and of the interest therein to which they are respectively entitled. The *persons* are described as my *granddaughter* Joanna Kneeland, her husband and *issue.* Her right to and interest in the fund, and that of her children and husband, are described as identical with that of the daughters of the testator, their children and husbands. If Mrs. Kneeland had been an entire stranger to the blood of the testator, the description of her *interest* in the fund would have been the same, if he intended she should share equally with his daughters. This would not have made her a daughter, or tended to prove that the testator so considered her, unless identity of interest is equivalent to identity of relationship. The 6th rule above mentioned is therefore consistent with the other provisions of the will. In all of them Mrs. Kneeland, when referred to as devisee, is described as a grandchild, her children as the issue of a grandchild, the children of a deceased son as *grandchildren*—the words being used appropriately and according to their strict primary signification. In such case, says Mr. Wigram, it is an inflexible rule of construction, that the words of the will, if sensible, in reference to extrinsic circumstances, shall be interpreted in their strict and primary sense, and no other, although they may be capable of a secondary interpretation, and although the most conclusive evidence of an intention to use them in a secondary or popular sense be tendered. ( *Wigram on Wills,* 17, *prop.* 2.) We are embarrassed by no such evidence in the present case. The children of Mrs. Kneeland stood one degree further removed from the testator than twenty-eight other persons specially designated as legatees. What their circumstances or necessities were does not appear; but the testator might have

supposed, that with the ample fortune which Mrs. Kneeland inherited from her father in addition to the share devised to her in his will, her children might without injustice be excluded from the class of beneficiaries mentioned in the codicil. The petitioners must stand upon their legal rights; and as they are not named or described in the codicil, they can not claim the benefit of its provisions.

The decree of the chancellor should be reversed, and that of the vice chancellor affirmed.

Ordered accordingly.