## HEYWARD *vs.* HASELL.

Testator devised to each of his sons, R and J, for life, with remainders to their "children" and "grandchildren," and with cross-remainders between them; but, if both should die, leaving no such "lineal descendant" of either, then over, "to be equally divided among all such of my grandchildren, begotten or to be begotten, of my daughters, as may be alive at the time of the death of the survivor of my sons, to be divided, share and share alike, among such of my grandchildren by my daughters," their heirs and assigns, forever. The testator had four daughters, and, at the time of the death of the survivor of R and J, they had fifty-nine descendants then living, seven of whom were grandchildren, and the rest great grandchildren and great great grandchildren of the testator. The limitation over having taken effect, *held* that the grand children were entitled, in exclusion of the other issue of the daughters.

Grandchildren, in its primary and ordinary sense, includes only the children of children.

BEFORE CARPENTER, J., AT CHARLESTON, MAY TERM, 1870.

The facts of the case are stated in the Circuit decree, which is as follows:

CARPENTER, J. The only question submitted to me, is one of the construction of that part of the will of John Ashe which relates to the limitation over of certain real estate, after the death of the survivor of his sons, to the grandchildren of testator, to be equally divided among them, share and share alike. The testator gave a portion of his real estate to each of his sons, Richard and John, for life; and from and after the death of such sons, to and among all and singular the children of said son whom he may leave living at his death, and, if there be but one child, then the whole to that one. But, if it so happen that, at the death of his son, any of his children should previously have died, leaving living any grandchild, or grandchildren of said son, then such grandchild or grandchildren to stand in the place of his or their deceased parent, and take the parent's share. After a cross limitation over to the sons in the same terms, the will proceeds: "But if it should so happen that, at the time of the death of both my said sons, there should be no lawful lineal descendant of either, to take the estates, according to the foregoing limitations, then, and in that case, I give and devise all and singular the lands, tenements and hereditaments, which are so as aforesaid devised, to be equally divided among all such of my grandchildren begotten, or to be begotten of my daughters, as may be alive at the time of the death of the survivor of my sons, to be divided, share and share alike, among such of my grandchildren by my daughters, and to their several and respective heirs and assigns forever; excepting, nevertheless, the share or shares which may be allotted to the children of my daughter, Eliza Livingston, wife of Philip P. Livingston, of New York, which shall be subject to the restrictions, limitations and trusts hereinafter fully set forth and specified in relation thereto." The testator had six children living at his death, to wit: two sons, Richard and John S., and four daughters, Miss Harriet Ashe, Mrs. Hannah Hasell, Mrs. Mary Gadsden and Mrs. Eliza Livingston. Richard and John S. both died, unmarried, and without issue; and, at the death of the survivor John S., in 1868, there were surviving him seven grandchildren of John Ashe, the children of two of his daughters, (Mrs. Hasell and Mrs. Livingston,) twenty-four great grandchildren, and twenty-eight great great grandchildren; and the question is, whether the seven

grandchildren are entitled to the estate under the provisions of the will, to the exclusion of the great grandchildren and the great great grandchildren, or whether all must be admitted to a participation in the division thereof.

After careful consideration and full argument, I am of opinion that the grandchildren are entitled, to the exclusion of all the others. It is a settled rule in the construction of wills that words are to be taken in their ordinary and natural sense, unless the testator has clearly indicated otherwise. It is plain to my mind that the testator used in this will the simplest words, and intended them to be understood in the popular sense; he avoids, as much as possible, the use of technical phrases, such as "issue of the body," "heirs of the body," etc. The words that he employs over and over again are " *child,*" " *children,*" " *grandchild,*" " *grandchildren.*" These words must be construed according to their primary acceptation, if there be any persons to answer the description. In this case there *are* " *grand-children*" to take under the limitation over. They not only answer the description and compose the class designated, but they are the only persons who do so. It is true that the word " *children*" sometimes embraces " *grandchildren;*" but this is only under particular circumstances, as, for example, where there are no persons to answer the description of " *children,*" or " *grandchildren,*" in the primary sense, or where there could not be any such at the time, or in the event contemplated. This condition does not exist in the present case, and the reason for enlarging the ordinary sense of the words does not apply. If there had been no grandchildren, then, under this rule, great-grandchildren might have taken, to prevent intestacy and give effect to the will. Another case, and the only other case in which the natural meaning of these words may be extended, is where the testator has clearly shown, by the use of other words, that he has used the words *children,* or *grandchildren,* as synonymous with *issue,* or *descendants* generally. It is earnestly contended that the testator, by the use of the words, " if there should be no lawful lineal descendants of either of my sons, to take the estate, according to the foregoing limitations," has clearly manifested an intention to use the word grandchildren and lineal descendants as convertible terms, and to extend the meaning of the former word indefinitely.

But I cannot bring my mind to that conclusion. The idea of extension of the literal meaning of words rests on an implication, and the implication, to create or enlarge an estate, must be a necessary

one, apparent on the face of the will. If the words, "without lineal descendants," had been unqualified, there might have been some room for doubt, but they are limited and explained by the words "to take according to the foregoing limitations." What are those limitations? Clearly, to *children* and *grandchildren*. In the case of *Horsepool* vs. *Watson*, 3 Ves., 383, it was held that the words issue (or descendants) did not necessarily import generality, but might be limited and controlled by other words. Here the preceding clear designation of children and grandchildren fixes beyond all reasonable question what was meant by the lineal descendants who were to take according to the foregoing limitations. Besides, it appears to me that the whole scheme of the will favors the interpretation in favor of testator's grandchildren; whom, in one part of the will, he describes as "lawfully begotten or to be begotten of his daughters," and still, in another part, as the "*children* of his daughters." In these instances he meant the same thing, and I cannot resist the conclusion that in all of them he meant to describe his grandchildren, the immediate offspring of his daughters. Let us look at the scheme of the will. The testator gives direct devisees to his sons and daughters, their children and grandchildren, and in default of such children and grandchildren he gives the share of any one so dying, whether son or daughter, to his grandchildren by his daughters in equal parts. In these direct devises he makes each child the head of a new line of descent, and extends the estate, upon the death of the life tenant, to his or her children and grandchildren, upon the failure of any one or more of these devises to first takers without child or grandchildren living at his or her death, he gives the share of the one so dying to such of his grandchildren by his daughters as shall be living at the time of such death. Two things are here to be observed: First, that grandchildren seem to be the ultimate objects for whom he is disposed to make provision. In the direct devises to his sons and daughters, he looks to their grandchildren, and no further. When, upon failure of any of these devises, the estate reverts to him, he makes a final disposition of it by giving it to his own grandchildren, the offspring of his daughters, and he does not give to grandchildren generally, but only to such as *shall be alive* at the time contemplated. Second, in every one of these direct devises, whether to son or daughter, there is an express provision for children taking by representation the share of a deceased parent. When the testator intended this to be done he knew how to effect it, and he did not

leave it to implication, but made express provision for it. But he has made no such provision in the limitations over to his grand-children. Now the claim of the complainants and of those who stand in the same category with him, rests on the idea that they are entitled to stand in the place of their parents. The answer to this claim is, that where the testator intended this right of represen-tation, or substitution, to take effect, he expressly so directed, and not having directed it in these limitations over, the conclusion is ir-resistible that he did not desire it to operate. Nor is there anything unreasonable in this. A man may do as he pleases with his own, and the generality of people are apt to regard with more favor the grandchildren, whom they see around them, than great grandchil-dren, or great great grandchildren, whom they never expect to see, and in whom they have no living interest. There are other parts of the will that confirm the construction which my mind favored at its first reading, and which has only been confirmed by the argument. I have not thought it necessary to introduce them here in aid of my conclusions, nor to add anything to the length of this opinion by citation of the numerous cases dis-cussed in the argument. It is enough to say that, in my judg-ment, they thoroughly sustain the construction which results from the natural reading of the will. In the judgment of the Court, the estates devised to Richard and John S. Ashe, on the death of John S., the survivor, vested in the grandchildren of the testator, the children of his daughters, who were living at the time of the death of the said John, and they take *per capita*, with exclusion of the great grandchildren and great great grandchildren of the testator. And it is so ordered and decreed. The case is ordered to remain upon the docket for such other orders therein as may be necessary from time to time. The question of costs is reserved.

The complainant, and those defendants holding the same position as himself, appealed from the decree, upon the grounds:

1. That His Honor erred in holding that the word "grandchil-dren" must be construed according to its primary acceptation, if there be any persons to answer the description: the construction of a will depending on the intention of the testator, and not being bound by so narrow and inflexible a rule.

2. That His Honor erred in holding that the words "children" and "grandchildren" cannot embrace more remote lineal descend-ants, when they are persons to answer the description of children or

33A

grandchildren in the primary sense, at the time, or in the event contemplated : this being practically to make the construction of a will depend upon and vary with events subsequent to its execution.

3. That His Honor concedes, in his opinion, that the terms *children* or *grandchildren,* in the first part of the clause of the will in question, are equivalent to the term "*lawful lineal descendants,*" in the same clause, and *vice versa ;* and it is, therefore, submitted that the larger interpretation should be given, in order to prevent the exclusion of the testator's lawful lineal descendants—" a construction which the Court will not adopt without necessity."

4. That the terms "lawful lineal descendants" occur and are used for the purpose of preventing the executory clause over taking effect, and must be construed, in accordance with all authorities, in its largest sense "issue."

5. That it is respectfully submitted that the will is to be construed according to the state of the testator's family at the time of making the will, or, at farthest, at the time of his death; and can, upon no authority, depend upon that condition at the death of the first taker, unless expressly so provided for.

6. That His Honor erred in holding that by this will all the issue of the testator, except the grandchildren, are excluded from its benefits; it being necessary to construe grandchildren in this will as synonymous with issue :

1st. In order to effectuate the intention of the testator, which is manifestly to provide for his issue to the farthest time possible.

2d. In order to avoid the "*absurdities, improbabilities and inconsistencies* which *may arise,*" (Lord Eldon,) from holding that the testator intended, even in what the respondents designate the direct devises, to deprive his issue of the provisions made for each stock, in case the child of the testator had died leaving only great grandchildren surviving him or her. In other words, inflicting the heavy penalty of disinheritance on those great grandchildren who should have had the misfortune of losing their parent and grandparent.

3d. In order to prevent intestacy, or any probability of intestacy, in case all the grandchildren had died previously to the death of the first taker.

4th. Inasmuch as the testator, by the use of the words, "lawful lineal descendants," as synonymous with the words "children and grandchildren," has affixed his own meaning to these latter

, Columbia, April, 1871.

words, and construed them to mean lawful lineal descendants or issue.

*Young, McCrady & Son, Campbell & Seabrook, Magrath & Lowndes, Whaley, Wilkins, Rutledge,* for appellants.

*Porter & Connor, Hanckel,* contra.

August 9, 1871.   The opinion of the Court was delivered by

WILLARD, A. J.   The only question raised by the present appeal involves the construction of the following clause of.the will of John Ashe: "But if it should so happen that, at the time of the death of both my said sons, there should be no lawful lineal descendant of either to take the estate, according to the foregoing limitations, then, and in that case, I give and devise all and singular the lands, tenements and hereditaments which are so, as aforesaid, devised, to be equally divided among all such of my grandchildren begotten, or to be begotten of my daughters, as may be alive at the time of the death of the survivor of my sons, to be divided, share and share alike, among such of my grandchildren by my daughters, and to their several and respective heirs and assigns forever."

The contingency expressed in this devise happened, namely, the decease of both of the sons of the testator, having no lineal descendant of either to take the estate, according to the limitations that preceded in the will the devise in question.   Accordingly, the limitation over to grandchildren begotten of his daughters living at the death of the surviving son took effect.   At this time there were living persons answering accurately the description, namely, grandchildren of the testator begotten of his daughters.   There were also living, at that time, children whose parents answered that description, and who, accordingly, were great grandchildren of the testator, and grandchildren of his daughters.   Of these great grandchildren of the testator there were two classes, namely, those whose parents had deceased prior to the death of the surviving son, and those whose parents survived that event.   A claim is made under this devise in behalf of each of the last named classes.   It is claimed that the term grandchild, as employed in the devise, must be taken in an enlarged sense, that would include great grandchildren.   The consequence of allowing this term in an enlarged sense has been discussed in a two-fold aspect.   According to one of these theories, grandchildren and great grandchildren take indifferently together, as a class, share and share alike, or, in other words, a

great grandchild, living at the death of the surviving tenant for
life, takes the same share with the grandchild, and this, without
regard to whether the parent of such great grandchild survived the
tenant for life, so as to take under the devise, or died before him.
The other theory excludes great grandchildren whose parents sur-
vived the life tenant and are still living. The first and most com-
prehensive of these theories is based broadly on the idea that great
grandchildren are described within the term grandchildren, and
take as purchasers under that description, and that all persons
living at the death of the surviving life tenant, answering either to
the description of grandchildren or of great grandchildren, take
together, share and share alike. The last and narrower theory
appears to be designed to meet a criticism to which the more com-
prehensive one is exposed. The ground of this criticism may be
simply illustrated. A testator devises an estate by way of remain-
der to his children, A, B and C, living at a certain event that must
happen subsequent to his death, share and share alike. At the
happening of that event, A is living, having no children ; B is liv-
ing, having four children ; C is dead, leaving four children living.
Now, if the grandchildren are equally described with children under
the term " children," then, at the vesting of the estate in remain-
der, there are living ten persons answering that description, namely,
A, B and his four children, and C's four children ; now, B and his
children would take five out of the ten shares, C's children would
take four of the remaining five, leaving to A but one share of the ten.
Such a disposition could not flow from the motives that ordinarily
influence parental conduct, for it negatives the idea of the force of
preference and natural precedence. We would expect to find such
an intent clothed in expressions of a somewhat peculiar character,
and such as would not ordinarily be employed when dispositions in
consonance with the ordinary parental feeling are intended. The
fact that grandchildren are under the scheme of the present devise,
the ultimate objects of the testator's bounty, instead of children,
would not divest the foregoing illustration of force, in its application
to the case in hand, for grandchildren are not descendants of so
remote a character as to preclude the idea that preference and
natural precedence influenced the intention of the testator towards
them. It may well be said, then, that if this is the effect of giving
the enlarged sense claimed for the term " grandchild," instead of
enforcing the presumed intent of the testator, it will tend to engraft
upon it consequences that, if contemplated by the testator, would

doubtless have been guarded against. In view of the obvious force of these considerations, an attempt has been made to retain the enlarged sense of the term "grandchild," without letting in great grandchildren to take, as purchasers *per capita*, with grandchildren.

It has been argued that all the children of a grandchild, deceased, at the death of the surviving tenant for life, take a grandchild's share—that is, taken together, they are, as a class, a grandchild within the meaning of the devise. Not that they take as representing their parent, for the parent, dying before the happening of the contingency on which the estate vested, had no transmissible interest. If the first mentioned theory impaired the presumed intent of the testator, for the sake of satisfying the sense of the words, the latter assumes to trace that intent beyond the limits of the expressions employed to convey it. The testator understood the force and effect of allowing the children of a deceased object of his bounty to take, as a class, their parents' share, and knew how to express such an intent in appropriate language, for such a provision is made in that portion of the will that creates the estates precedent to that limited by the devise in question. The unanswerable argument against implying such an intent from the devise in question is that the testator has undertaken to distinguish the cases in which the principle of representation should be employed in ascertaining the objects of his bounty, and has excluded the devise in question from that category. If, therefore, we are to read the term grandchild, according to the intent and understanding of the testator, as embracing great grandchildren, we must conclude that all who take under that designation, whether grand or great grandchildren, take as purchasers, share and share alike, a child taking an equal share with a living parent—brothers and sisters taking shares diminished according to the extent of the respective families.

The general rule is, that the language of the testator should be construed according to its primary and ordinary meaning, unless he has manifested his intention in the will itself to give a more extended signification.—*Howe* vs. *Van Schaick*, 3 N. Y., 538, *per* Gardner, J.

So long as there are persons in being to take according to the description, the foregoing statement of the rule is complete. Such is the present case.

The questions are: First. What is the primary and ordinary import of the term grandchild, in reference to its including or exclud-

ing great grandchildren? Second. Does the will manifest an intent to use that term in a sense more extended than its primary and ordinary sense, so as to include great grandchildren?

What, then, is the primary and ordinary import of the term grandchild? But for the expressions in *Hussey* vs. *Berkley*, it would be unnecessary to bestow much attention to the discussion of this question. A grandchild is certainly understood by all who use the English language as one in the degree of relationship in the second step. Lord Northington says, however, that " grandchild," without explanation, comprehends great grandchild, for, says he, " in common parlance," *   *  " the word grandchildren is used rather in opposition and exclusion of children than as confined to the next of descent, the children of children, and must, I think, have the effect of comprehending both, unless the intention appear to the contrary." Had that case distinctly ruled that proposition, and been followed to the present time, it might be difficult to free ourselves from the force of precedent and to determine the point in reference to the sense of the term prevailing at the present day. But such was not the case, as the decision of the Court finally rested on the fact that the testator had included a great grandchild by name and special designation in the class of grandchildren, the objects of the devise. Nor does it appear that any later case has authoritatively ruled the point. All we have to consider, then, is the sufficiency of its reasons. It may be just to conclude that where the testator is looking to "children," and says "grandchildren," he means something in opposition to and exclusive of children. But the same reasoning would lead us to conclude that when, as is claimed in the present case, he is looking to great grandchildren, and says "grandchildren," he means something in opposition to and exclusive of great grandchildren.

A contrary doctrine to that stated by Lord Northington was applied in *Earl of Oxford* vs. *Churchill*, (3 Ves. & B., 59.) Chancellor Walworth, in *Howe* vs. *Van Schaick*, (3 Barb. Ch., 488,) says: "Nor does the term grandchildren, without something further to extend its natural signification, include great grandchildren." Again, he says: " Such is not the natural sense of the term grandchildren."

As this is clearly an open question, so far as the Courts of this State are concerned, we must look to the sense of the term as commonly employed at this day. In this point of view we find no difficulty arising at the conclusion that, in its primary and ordinary

signification, the term grandchild is applicable strictly to the degree of relationship in the second step from the ancestor.

The second question then arises, does the will manifest an intent to use that term in a sense more extended than its primary and ordinary sense, so as to include great grandchildren ?

In construing an instrument, resulting from the concurrence of two or more minds, we are compelled to refer the terms and expressions employed to a common standard ; but as a bequest or devise stands on the purpose of the testator solely, which is ambulatory until finally executed, and a large latitude is allowed, and the testator may make his own vocabulary, if his intention to do so is clearly made out. In such an inquiry, we may resort to the rules of interpretation to fix the sense intended to be applied to the terms and expressions employed, and to construction to test the appropriateness of the assumed sense by the general and particular objects and intents disclosed. Before departing from the ordinary sense, we must find a reasonable necessity for so doing in the text of the will, or the designs of the testator, as therein set forth.

If the testator has given his own definitions, or has used terms convertibly, or has employed a term in two or more relations, so as to characterize its intended sense, we have certain rules to go by.

Looking, then, into the devise before the Court, the question arises, whether a reasonable necessity appears for departing from the ordinary sense of the term "grandchild," as employed by the testator.

The testator has not, in any part of the will, supplied the definition of the term "grandchild," but clearly assumes that his intention will be understood without such particular definition. Nor has he, anywhere, used the term "grandchild" as convertible with any other terms, such as "great grandchild," "issue," or "descendants." It was argued that such an instance occurred in the respective devises to sons of the testator, but the expressions referred to have a different import. After limiting an estate over, on the death of his respective sons, to their children surviving them, and to the children of a child dying before that event, he says : "But if it should so happen that, at the time of the death of both of my said sons, there should be no "lawful lineal descendant" to take the estate "according to the foregoing limitations," then a further limitation is to take effect. It is said that the term, "lawful lineal descendant," describes the persons to take. If that view be correct, still, primarily, it would be regarded as an expression convertible with

the previous expressions designating the persons to take under that particular devise, viz: grandchildren of the testator, children of his sons, together with great grandchildren, their children, in the case of a grandchild dying before the end of the life estate. To hold that the testator employed the term lineal descendant, in a particular sense, as convertible with grandchild and great grandchild standing together, would not be sufficient ground for holding it convertible with "grandchild" standing alone in a devise where great grandchildren are not named. But the construction put upon this expression by the Circuit Judge is more perfectly consonant with the true sense. It is not an instance of using terms convertibly; the term "lawful lineal descendant" refers to, and is limited by, the proper terms of description which includes children of a son, and the child of such child. We find that the testator has uniformly, throughout his will, employed terms of particular import to characterize the objects of his bounty, such as children, children's children, grandchildren and grandchildren's children, and, by means of such expressions, has clearly indicated the persons intended to take to a degree as low as that of his great grandchildren.

It is equally true that, apart from any attempt to construct the terms by the ultimate intention of the testator, grandchild is nowhere put in any relation suggestive that it is not employed in its ordinary and primary sense.

It is noticeable, also, that grandchildren by his daughters take by a double description; first, as testator's grandchildren; second, as "begotten or to be begotten of my daughters," and, again, as children "by my daughters." Both branches of this description ought to be satisfied, and if, on the one hand, they take as grandchildren, on the other hand, they take as children. Taking them in the character of "children," under a very exact description of that relation, the case is governed by *Ruff* vs. *Rutherford*, Bail. Eq., 7, and *Snoddy* vs. *Snoddy*, 6 Strob., 84, cases in consonance with the current of decisions, and with other similar cases, settling the law of this State, that grandchildren cannot take under the description of children in the primary and ordinary sense of that term.

It only remains to consider whether the ultimate intention of the testator, as manifested by the whole will and all its parts, taken together, creates any reasonable necessity for taking the term in question beyond its ordinary sense.

It has been argued that it was the intention of the testator to

exhaust the whole line of succession under such devise in fee before the limitation should take effect. The argument supporting this view must mainly depend upon the reasonableness of such a disposition, as it has little foundation in the text of the will. The Courts do not undertake, in construing wills, to satisfy the general conviction as to what is a reasonable devise. The testator has, clearly, a right to make an unreasonable disposition of his estate, so far as this test is concerned, and if he has done so the Courts cannot interfere. The testator has interposed a limit to his bounty in the direction of the succession of his descendants. In the case of sons and their descendants, the limit is his own great grandchildren; in the case of daughters, it is his grandchildren. The clue to the reason of this doctrine is afforded by the argument in behalf of the succession of great grandchildren, namely, that the line may be longest preserved in the direction in which the name of the testator would be associated with his estate.

We are not at liberty to assume an intention opposite to these formal limits given in particular language by the testator himself, evidently aided by sagacious legal counsel. The contingency of the death of a grandchild bearing children was before testator's mind. Twice he referred in terms to it, and made provision in case of such an event. Where, therefore, he does not so provide, such omission was intentional.

The decree of the Circuit Judge must be affirmed and the appeal dismissed.

*Moses*, C. J., and *Wright*, A. J., concurred.