NEW YORK COUNTY.—HON. RASTUS S. RANSOM, SURROGATE.— January, 1889.

## MATTER OF THOMPSON.

*Judicial settlement of the account of* WILLIAM PRICHARD, *surviving trustee of the will of* WILLIAM D. THOMPSON, *deceased.*

Where the decedent's will can be construed in more than one way, the rule is that the language of the testator should be construed according to its primary and ordinary meaning, unless the decedent has manifested his intention in the will itself to give to it a wider and more extended signification.

A testator divided a portion of his estate into four shares to be held in trust, and set apart a guaranty fund, to be divided into four parts, designating them respectively one to each of the four trust shares, to guard against temporary or other failure of income of the securities contained in the trust, and directed that in case of default or delay in payment of interest or income of each of said trust funds, then the income or so much thereof as may be necessary of the corresponding guaranty fund, or, if need be, the principal thereof, should be applied to make good such deficiency.

*Held*, that the testator intended to fix a standard of income as of the time of his death, which should be the measure of liability of the guaranty fund in case of a total failure of income of the particular stocks or bonds first put into the trust by the trustees or those substituted for them, but that he did not mean to fix the exact annual income to be derived from the several trusts which he directed.

*Further held*, that the guaranty fund must make good the interest on any stocks or bonds, or any property substituted therefor in the corresponding trust fund, which defaulted or failed to produce any income

at all, up to the amount which such fund produced at the death of the testator.

ACCOUNTING of William Prichard, surviving trustee, under the will of William D. Thompson, deceased.

The only question raised by this accounting was by exceptions to the report of the referee in relation to the proceedings of the trustee in regard to the trusts created by the thirteenth paragraph of the will of deceased, which paragraph appears in the opinion of the Surrogate.

The construction of this clause of the will claimed by the trustee and residuary legatees was the one which had been acted upon by all parties for thirteen years; that was, that "default or delay in payment of interest or income of either of said trust funds" meant actual default or delay in the payment of interest or dividends, as opposed to an assumed default or delay arising from a comparison of the total net income of one year with the total net income of some other year chosen as a standard.

The beneficiaries, on the contrary, contended that these words established a permanent standard of income determined by the income earned on such securities either the year before or the year after the testator died. The referee held the latter to be the true construction of this clause of the will, and he tabulated the deficiency made under this theory at $24,666.88 for the whole four trusts, while finding that all actual defaults or delays in payment had been made good.

The other facts sufficiently appear in the opinion of the Surrogate.

LEWIS SANDERS, *for executors of* JOHN B. THOMPSON.

DUNCAN SMITH, *for* WILLIAM PRICHARD, *surviving trustee.*

EUGENE H. POMEROY, *for* CHARLES R. THOMPSON, *legatee.*

JAS. S. GRAVES *for* ORSON B. SMITH *and others, executors of* JOHN LEE SMITH.

THE SURROGATE.—The question is: what was the real intent of the testator under the second, third, fourth, fifth, sixth and thirteenth clauses of his will? The clauses second to sixth, both inclusive, are substantially alike in language and meaning.    What effect the thirteenth clause has upon those mentioned, to which it relates, is the point in dispute.

By the second clause, the testator directs his executors to " select such productive bonds and stocks amounting at their par value to the sum of $500,000, as shall at my decease be the most valuable, in proportion to their par value, and to make a fair and equal division thereof into five equal parts, of the value at par of $100,000 each, and an equal proportion, as near as may be, of the same line of bonds or stocks to be assigned to each share.    One of said shares, amounting at par to $100,000, I give and bequeath to my nephew, John B. Thompson, of the city of New York, who has been a faithful assistant to me for many years, to his sole use and disposal, forever."

By the third clause of his will the testator provided :

" One other of said shares, amounting at par to $100,000, I give and bequeath unto my executors herein named, or such of them as shall qualify and act as executors of this my will, the survivors and survivor of them and their successors and assigns, upon

the trusts and to the intents and uses following, that is to say, to collect and receive the interest and dividends thereon, falling due after my decease, and out of the net income to apply to the use of my nephew," etc.

There is no substantial difference, as already observed, between the third clause quoted and the fourth, fifth and sixth clauses, except the addition of the word "income" to the phrase as it is given in the third clause, so that it reads "net interest, dividends and income thereof" instead of "the interest and dividends." I attach no importance to this change. The meaning is the same.

The thirteenth clause of the will is as follows:

"As my property consists mainly of securities and stocks, which I have selected on account of their sound and permanent value, it is my will that my executors should be under no obligation to change such investments, and in no way responsible for omitting to do so, and in general I advise that they should not change them except as they may, from time to time, see good and sufficient reason for doing so. And for the purpose of more certainly guarding against any temporary or other failure of income upon said bonds or stocks, so long as the same shall constitute the whole or any part of the four shares mentioned and placed in trust under the third, fourth, fifth and sixth clauses of my foregoing will, I do further direct my executors to set apart, out of the most valuable in proportion to their value, of my remaining bonds and stocks, the amount of $32,000 at par, and to divide the same into four equal parts,

designating them respectively one to each of the said four trusts, and to hold the respective parts, and receive the income thereof during the continuance of the trust for which they are respectively designated, and if it shall happen during such continuance that there shall be any default or delay in the payment of the interest or income of either of said trust funds, then the income of the corresponding part of said amount of $32,000, or so much thereof as may be necessary, and if need be the principal, or any part thereof, shall be applied to make good such deficiency, and so much of the income of said amount of $32,000 as shall not be required to make good such deficiency shall go and be disposed of annually as part of my residuary estate, and upon the termination of each of said trusts, the principal of the corresponding part of the said amount of $32,000, or so much thereof as shall then remain, shall go and be disposed of as part of my residuary estate."

The general and inflexible rule of construction of a will is, that the language of the testator should be construed according to its primary and ordinary meaning, unless he has manifested his intention in the will itself to give it a different and more extended signification. Hone v. Van Schaick, 3 *N. Y.* 540; Van Nostrand v. Moore, 52 *Id.* 18; Wylie v. Lockwood, 86 *Id.* 298. Wake v. Varah, (*L. R.* 2 *Ch. Div.* 348), lays down the rule of construction of a will, that the language of the testator should be literally interpreted, " unless satisfied, upon a consideration of the whole contents of the will, not only that the language used was insufficient to effect his full intention,

but that the will itself afforded sufficient evidence of what his intention was." In that case it was said to be "apparent that the testator had not used language adequate to provide for all the events for which he had expressed his intention to provide."

This case is cited approvingly by the court in Wylie v. Lockwood, *supra*.

The plain import and meaning of the will of Thompson is contrary, in my view, to the construction given to it by the learned referee, in the respect that he meant to fix the exact amount of annual income from the several trusts he directed should be set up.

There is no ambiguity in his language. He provides that the beneficiaries shall receive the net interests, dividends, and income annually. The language used by him is apt to disclose his intention. An examination of the whole will makes his intention plain. There is no possibility of rightly invoking the rule that in some cases it is the duty of the court to subordinate the language to the intention.

All the parties to this proceeding, have filed exceptions to the referee's report. I first consider the chief point in dispute, already stated, and which is presented by the exceptions of the surviving trustee; the executors of John B. Thompson and the executors of John Lee Smith, the two deceased trustees.

It is clear to me that the testator did intend to fix a standard of income as of the day of his death, which should be the measure of the liability of the guaranty fund in case of a total failure of income on the particular stock or bonds first put into the trust by the executors, or any that might be properly substituted

therefor.   And all concerned have really so construed the will.   The trustees made up the default on the St. Nicholas Bank stock by paying the cestuis que trust an amount equal to the dividends earned and paid thereon during the first year after the testator's death, also same amount on the Midland bonds.   Here, then, was a standard of income in case of total default, or, in other words, entire loss of income.   But I do not think this testator meant to provide for diminution of income ; that is, he did not intend more than that the trust should produce something each year.   So far as the bonds are concerned, they must produce a fixed and certain income each year or none at all ; and, in the latter case, the guaranty fund was liable to make good the default or deficiency, and, of course, such deficiency must be the amount of interest earned on the bond as provided for by its terms. Hence, we have the standard of income on the bonds of the testator, which he directed should be put into these trusts.   This standard is found in the bonds themselves.   Such was the construction of the trustees who paid the defaulted coupons on the Midland bonds.

As to the stocks owned by the testator at his death, and which he directed should be put into these trusts, he evidently intended that all net income, whatever it might be, derived from dividends thereon, should go to the beneficiaries, but he did not mean to fix such income arbitrarily.   No such intention can be imputed to him.   He knew of the fluctuating earnings of corporations, and that all dividends must be paid from earnings ; that the dividends in one year might be more or less than those of any previous year.   His

intention was that the beneficiaries should have the actual dividends on those stocks, and that the stocks should produce dividends each year, but in one case of default and total failure to produce in any year, then the guaranty fund should make good, and, as I have seen, the measure of that fund's liability in such an event, must be found to have been in the mind of the testator, the dividend earned on the stock at the time of his death, or any property substituted therefor, and the dividend on it at the time of such substitution.

Any other construction seems to be unwarranted. If the testator had intended that these trust estates should produce a fixed income, he would have said so in unmistakable terms.   If he had had such a thought, and had intended to elucidate it and give it effect, we should find language in his will plainly expressive of such intention.   There is not, in my view, a single ear-mark that he had such a thought in his mind.   It is not at all likely that he had any idea that the stocks would not earn dividends each year during the life of the trusts, respectively, but for the purpose of providing, so far as $32,000 and income thereon would go, for a total loss of interest and dividends in any year, he set aside the guaranty fund.   He has left us without the clearest words of his intention of the measure of the guaranty fund's liability in such an event, but, as already remarked, he no doubt intended—at least such is the obvious and only inference from the language used by him—that the dividends earned at his death should be the standard of such liability. This construction has been given by the trustees and

acquiesced in for many years by the cestuis que trust, as witness payment by the trustees of the defaulted dividends on the St. Nicholas Bank stock.   They found the measure of the guaranty fund's liability in that respect to be the dividends which were paid on that stock at or about the date of the testator's death. The testator's intention may be discovered by regarding the amount named by him as a sufficient guaranty fund.   He firmly believed in the productiveness of his securities during the continuance of these trusts, but in order to indemnify the beneficiaries for any possible loss by temporary delays in payment of the income produced each year, he set aside this small guaranty fund.

The fate of this fund, under the construction given by the learned referee of the will, seems to me convincing proof that his construction is at variance with the real intention of the testator.   The testator knew that some of these securities must mature before the trusts could possibly terminate, and that their proceeds in money would come into the hands of the trustees, whose duty it would be to invest it.   It cannot justly be said, I think, that, pending any such investment, the guaranty fund should pay the same rate of interest as that provided for in the matured security ; not more than lawful interest could have been lawfully charged and I doubt if more than the trustees were able to obtain on actual investment could have been required.

On such investment, made in good faith by the trustees, the guaranty fund would have been liable for a total failure of the interest provided for by the

terms of the contract for that investment, not for the rate of interest provided for by the terms of the matured securities, and just so in regard to any dividend paying stock which was set apart by the trustees out of the stock left by the testator. The trustees had the right to change the securities in these trusts. If they had done so by the proper exercise of this power, and had, as in duty bound to do so, replaced them with other stock, no one, I think, will insist that the guaranty fund would be liable, in case of default or temporary failure of dividend on such stock, to the amount paid on the displaced stock; but, instead, it would be liable for such dividend as the replacing stock received at the time it became a part of the trusts.

I feel compelled to disagree with any other construction of this will. It follows, therefore, that the amount found now due to the cestuis que trust, which was ascertained by finding the difference between the interest and income actually received on the trusts the first year after the testator's death, and the aggregate interest and income actually paid them for the several years since, must be allowed, and in that regard I must overrule the learned referee.