DE NOTTBECK and wife *vs.* ASTOR and others, executors, &c.

A testator, by a codicil to his will, bequeathed as follows : " Also I give to the said six children of my daughter Dorothea, or to such of them as may survive me, one hundred thousand dollars of the public debt, &c. usually called the water loan; to be paid to each on attaining their age of twenty-one years, and the interest of the shares of those under that age to be accumulated for their benefit until that period; and in case any of them shall die before that age, without surviving issue, then his or her shares shall go to the survivors." *Held* that this was not a bequest of $100,000 in water stock to *each* of the six children separately; but that it was a bequest of $100,000 to all of the children *collectively.*

THIS was an appeal by the plaintiffs from a judgment rendered at a special term. The action was brought against the defendants as the executors of John Jacob Astor, deceased, to compel the payment of a legacy of $100,000 claimed to have been given to the plaintiff, Mrs. De Nottbeck, by the second codicil of the testator's will. By that codicil, which was dated January 9, 1839, the testator, after giving to his daughter Dorothea the income of $100,000 deposited in the New-York Life Insurance and Trust Company, during her life, or so long as she or her husband, or any one claiming under them, should not attempt to incumber, charge or assign the same, and after her death giving the capital sum to her daughters, Eliza, Louisa and Cecilia, [the plaintiff,] and to her sons, Walter, Woodbury and Eugene, and to such of them as should survive the testator, to be equally divided among them—gave and bequeathed as follows :

" Also, I give to the said six children of my daughter Dorothea, or to such of them as may survive me, one hundred thousand dollars of the public debt of the city of New-York, bearing five per cent interest, usually called the Water Loan; to be paid to each on attaining their age of twenty-one years; and the interest of the shares of those under that age, to be accumulated for their benefit until that period; and in case any of them shall die before that age, without surving issue, then his or her shares shall go to the survivors."

The complaint averred that the plaintiff Cecilia De Nottbeck was one of the six children of the testator's daughter Dorothea,

mentioned in the above codicil; and that she the said Cecilia arrived at her full age of twenty-one years on the 12th of June, 1849, and was married to the plaintiff, Jean De Nottbeck, in October following. And the plaintiff claimed that by virtue of the said codicil the said Cecilia was and is entitled to a legacy of $100,000 of the public debt of the city of New-York, bearing five per cent interest, usually called the water loan: and that on her so attaining the age of twenty-one years, the same legacy with the interest and accumulations thereof, became payable to her by the said defendants. The complaint alleged, that on or about the 27th of November, 1849, the defendants offered to pay to the said Cecilia, of such public debt, or its equivalent, the sum of $18,120,69, as the amount which the defendants considered her entitled as and for said legacy, but without prejudice to the claim of said Cecilia, or the plaintiffs in her behalf, for any other or greater amount, to which she or they, by law, might be entitled: and that said Cecilia did thereupon accept and receive the amount so offered, accordingly. And that the defendants refused to pay any greater amount.

The defendants, by their answer, admitted most of the facts set forth in the complaint; but insisted that under the codicil in question only one-sixth part of $100,000 was to be paid to each of the legatees named therein. They averred that at the date and time of execution of the said codicil of January 9th, 1839, the testator held $120,000 of the New-York City Water Loan, in the said codicil mentioned, and no more; and not enough to answer six legacies of $100,000, one to each of the children of Dorothea Langdon, or a legacy of that amount to any two of the said children; and that on the 11th day of January, 1845, when the said codicil was re-acknowledged and re-published, the testator only held $74,419 of that stock; and at the death of the testator, on the 29th day of March, 1848, the testator held only $49,419 of such stock; and that in no instance was any legacy of stock, or of any other thing, given by the will or any codicil of the testator, which he did not possess and hold at the time of the date and execution thereof, or which exceeded the amount which he at such times held of the kinds of property disposed of.

The action was tried at the New-York circuit in November, 1850, before Justice Edmonds. After hearing the testimony of the parties, his honor ordered the complaint to be dismissed, with costs; and the plaintiffs appealed.

*J. Coit*, for the appellants. I. It cannot be pretended that the grammatical construction of the clause of the codicil in question justifies the interpretation insisted upon by the executors. The sum directed "*to be paid to each*," is the $100,000 *of the public debt*. The antecedent of the word each is the "*six children of my daughter Dorothea*." Omit the explanatory words which follow the words "public debt," and the construction is too plain to be controverted. It is in effect precisely this : " I give to A., B. and C., one hundred dollars, to be paid to each." The words "to be paid to each," are as material as the sum of one hundred thousand dollars. I give to A., B. and C., one hundred dollars to be paid to each, is surely the same thing as I give to each of A., B. and C., one hundred dollars.

II. The construction claimed by the legatees requires neither the addition nor the rejection of a word. It simply takes the words as they stand in their natural meaning, and gives effect to them accordingly.

III. The construction claimed by the executors requires either the rejection of the words " to be paid to each " and the insertion of the words " collectively in equal shares," after " the hundred thousand dollars of public debt," or the interpolation of the words " one sixth part," before the words " to be paid to each," as claimed in the answer. But this is obviously begging the whole question. Words so materially changing the signification cannot have been left to be supplied by construction, by so careful a draftsman as is understood to have prepared this will, and so cautious and accurate a man as the testator. (*Trigg* v. *King's Representatives*, 1 *Rand*. 252. *Miles* v. *Wister*, 6 *Bin*. 477. *Lee* v. *Pain*, 4 *Hare*, 201, 225. *Difflis* v. *Goldsmith*, 1 *Mer*. 417. *Ex parte West*, 1 *Bro. C. C*. 575. *Tweedale* v. *Tweedale*, 10 *Sim*. 453.)

IV. Admitting that the language used is ambiguous, the will

De Nottbeck v. Astor.

itself furnishes the best interpretation of its own terms. Words occurring more than once in a will, shall be presumed to be used always in the same sense, unless a contrary intention appears by the context; and on the same principle where a testator uses an additional word or phrase, he must be presumed to have an additional meaning. (2 *Jarmyn on Wills*, 744, *R.* 18.) Now where a certain amount is elsewhere given by this will, intended to be divided among several, this is expressed by the words " to be equally divided among them," as the $100,000 of trust company deposit, in the previous clause; the $5000 *to the children of Maria Moore*, and $5000 to *the children of Hannah Moore*. On the other hand, where a like sum is given to several it is expressed by the word each. If the bequest were of a chattel obviously incapable of division, as a watch, a ship, or the like, the interpretation of the executors would never have been thought of. Now it is equally impracticable to divide 1000 shares of water stock of $100 each into six equal parts. (*Sess. Laws of* 1834, *p.* 451; 1838, *p.* 88. *Corp. Ordinances*, 7*th May*, 1835, *and* 3*d May*, 1838.) The fractional sum of $16,666,67 of stock, if the division were practicable, is a sum not likely to have been designed by Mr. Astor, whose gifts were of liberal amounts —and even sums. The use of the term " shares" in the subsequent part of this clause, is in no respect opposed to our interpretation. It naturally refers to the sum or interest previously expressed, whatever that may be. It is so used and defined in other parts of the will. It is constantly so used by the best legal authorities. (*Miles* v. *Wister*, 5 *Bin.* 477. *Ex parte West*, 1 *Bro. C. C.* 575. *S. C.* 1 *Cox's P. Wms.* 276, *note. Vandergucht* v. *Blake*, 2 *Ves. jun.* 534.) The word "also" which connects this clause with the previous clause does not affect the legacy in question, with the special provision "to be equally divided among them," therein contained. (2 *Jarmyn on Wills*, 745, *R.* 22. 2 *Williams on Ex'rs*, 712, *pt.* 3, *b.* 3, *ch.* 2, § 1. *Doe* v. *Westley*, 4 *B. & C.* 667.)

V. The testator, in the 11th clause of the first codicil, directs that certain advancements to the legatees shall " be deemed so much on account of the provision in my will or codicil in favor

of such persons." In the provisions made for Woodbury and Walter Langdon, on occasion of their marriage, he gives to each $150,000 in anticipation and satisfaction of legacies to them in his will and codicil. The only cash legacies to these grandsons, (except certain remainders,) are two legacies of $25,000 each, and the $100,000 in question, which precisely make up the amount of the marriage provision, of $150,000. It is idle to suppose that Mr. Astor meant, in this reference, to include the different remainders, contingent or otherwise, in legacies given to others : but adding them all together, they fall far short of making up the $150,000, unless this clause be interpreted to give them $100,000 each. There is no reason to believe that these grandsons were special favorites of the testator—or that he intended to give them a larger share than their brother Eugene, or their sisters—among all of whom he exhibited the strictest impartiality. An apparent uncertainty may be removed by collecting the general intention from other passages in the writing so as to make the whole consistent. Or by a reference to some other writing or some medium of explanation adverted to in the instrument. (1 *Phil. on Ev.*, *Cowen & Hill*, *p*. 538.)

VI. It is of no moment that proof has been introduced to show that the testator had not a requisite amount of the stock in question at the date of the codicil ; the answer and proofs show that the amount the testator held was constantly varying. If regarded as a general bequest of stock, the executors are bound to procure it, if not possessed by the testator on his death. (1 *Roper on Leg.* 204. 2 *Wms. on Ex'rs*, pt. 3, b. 3, ch. 2, § 3, *pp*. 739, 742.) The testator expressly provides, in the 11th clause of the will, and in the 8th clause of the 5th codicil, that if any of the stocks or funds specifically bequeathed, should not be possessed by him at the time of his death, the same should be made up by purchases of the same, or similar stocks, out of the estate. It is not pretended that the estate was not ample to make good the full amount claimed.

VII. A further argument in favor of the construction contended for, is in the greater approach to equality in the gifts to the different members of the testator's family. The will was

made in July, 1836. The codicil in question, in January, 1839. Taking the accumulation of the estate at four or five hundred thousand dollars a year, it amounts in the three years to over $1,200,000, besides the falling in of Mrs. Rumpff's share : of this it is not natural to suppose that the testator designed all but one or two hundred thousand dollars to go to the residuary devisee.

*D. Lord*, for the defendants. I. The terms of the codicil are entirely explicit as to the persons and the subject given, namely, " to the said six children, &c. *one hundred thousand dollars* of the *public debt* of the city of New-York, usually called the water loan." It would call for a violent construction to make this carry six hundred thousand dollars of the same property. The appropriate phrases most readily importing so large a gift, would be " to each" of the said six children, &c. or, " six hundred thousand dollars to the said six children," &c. The inference, from not using this appropriate phraseology for this enlarged legacy is clear proof he did not intend it. The survivorship declared among the six children, would have no meaning, as applied to six several legacies ; but the gift of one aggregate to six persons, gives a benefit by survivorship to the legatees, to whom such benefit is intended ; and this was the clear meaning of the testator. The use of the word " shares," shows that one subject was to be given in divided parts : it would not be the natural force of the word " shares," which imports division of a parcel or a named sum, to make it operate the multiplication of similar sums. The word " shares" occurs very frequently in the will and codicils, always meaning aliquot parts of a fixed subject. The use of the phrase " to be *paid* to each on attaining their age," &c. has only reference to the time when the shares are to be handed over. Such is the use of the phrase in all other parts of the will. (2 *Jarman on Wills*, ch. 48, § 2.)

II. The context also clearly shows the meaning to be that adopted by the court. The legacy of one hundred thousand dollars, trust company certificates, in the same codicil, after the death of Mrs. Langdon, is in point as to this meaning : " *to be*

*paid to them on their attaining that age, respectively*," and " *to be paid to each* on their attaining the same age," are words of exactly the same import and meaning; it is inadmissible to make the one phrase carry $100,000, the other only one-sixth of it.

III. The codicil of June 3, 1841, speaking of the legacy to Louisa, (being one of the children situated exactly as Mrs. Nott-beck) shows that Louisa's part of this legacy was " a share," and not a legacy, of $100,000 stock. He names the legacies of $25,000, by their amounts; the legacy in question he calls " the share," &c.

IV. The construction claimed is contrary to the legacy, which in its intent was a specific legacy, and presumptively applicable to stock then held by him. At the date of the will and codicil, he had not stock enough to answer the six legacies, enlarged to $100,000 each. The clause of the will preventing the ademption of legacies of stock, by his parting with them, shows that he contemplated only stocks which he had at the time he made his dispositions. Unless the legacies were specific this clause is unnecessary. And he expressly speaks of the stock or funds as " specifically bequeathed." (*Townsend* v. *Martin,* 7 *Hare,* 471.) It is competent to look into the state of the testator's property and the testator's relation thereto, to give light on the construction of the will. (*Fonnereau* v. *Poyntz,* 1 *Bro. C. C.* 472. *Attorney General* v. *Grote,* 3 *Meriv.* 316; reversed 2 *Russ. & M.* 699. *Boys* v. *Williams,* 2 *Id.* 689, and cases cited in these authorities. 2 *Williams on Ex'rs,* 1002.)

*By the Court,* EDWARDS, J. The question which is presented in this action arises under the following provision contained in the will of the testator: " Also, I give to the said six children of my daughter Dorothea, or to such of them as may survive me, $100,000, of the public debt of the city of New-York, bearing five per cent interest, usually called the water loan; to be paid to each on attaining their age of twenty-one years, and the interest of the shares of those under that age, to be accumulated for their benefit until that period; and in case any of them shall

De Nottbeck *v.* Astor

die before that age, without surviving issue, then his or her shares shall go to the survivors."

The plaintiffs contend that this is a bequest of $100,000 in water stock, to each of the six children of the daughter of the testator separately. The defendants, on the other hand, insist that it is a bequest of $100,000 in stock to all of the children collectively. The intention of the testator is not perhaps expressed with that certainty which might be expected; yet it seems to me that it is sufficiently apparent. If the disposing part of the questionable provision is taken by itself, it will be seen that it gives to the *six children of the testator's daughter, or such of them as shall survive him, one hundred thousand dollars of the public debt*, &c. He does not say that he gives that sum to each of the children; neither does he say that he gives to the six children $100,000 each. All that he gives to the whole of them is $100,000. This is given to them in *presenti*, but is not to be paid to any one of the children until he or she shall attain the age of twenty-one years. Had it not been for the provision made as to the time of payment, there would not be a question as to what the testator intended to *give*. What was it then that he intended should " *be paid to each ?*" The answer is, that which he had given; and that is, as I understand the bequest, the share of each in the sum of $100,000, which is given to all. The error of the plaintiffs consists in construing the last clause in the bequest as defining the sum which is given, instead of merely fixing the time when the sum which is given is to be paid. The sum which is to be paid to *each*, is not the whole sum previously mentioned, but the share of each child in that sum. It is true that the word *share* is not used in speaking of the time of payment, but it seems to me to be evident that the testator referred to a share of an integral sum; for in the next clause of the same sentence he says that the interest of the shares of those under twenty-one years shall be accumulated for their benefit; and he provides that in case any of them shall die, his or her share shall go to the survivors. I do not deny that the word *share* might be

used in such a way as to make it applicable to a separate specific bequest to each of the children; but I do not think that it is so used in this case. In its ordinary acceptation, it means a part of a whole subject or thing. It implies a division of an entire subject or thing into parts.

This is the construction which I draw from the language used by the testator, irrespective of any other considerations.

It will be seen, however, that the bequest in question does not constitute a distinct item in the will, but is in addition to a previous subdivision of one of the items, which clearly gives the sum of $100,000 to all the children collectively, to be paid to them on their attaining the age of twenty-one years. Again, it appears that the testator had not water stock enough to answer a bequest of $600,000. I have alluded to the latter considerations, not as laying any particular stress upon them, but rather to show that there is nothing in the other parts of the will, or in the circumstances under which it was executed, which is unfavorable to the construction which I have given to the language used by the testator.

But it is said that he gave the sum of $150,000 to two of the sons of his daughter Dorothea, on the occasion of their marriage, and declared the same not to be in addition to the provisions in their favor by way of legacy under his will and codicils, but in anticipation and satisfaction thereof; and that, adding all the other legacies together, whether contingent or otherwise, they fall short of the sum of $150,000, unless the provision in question is interpreted to give $100,000 to each of the children. The advance which was made by the testator to his grandsons, upon the event of their marriage, was what he then supposed to be sufficient in reference to their new relations, and in reference to a state of circumstances different from that which existed at the time he made his will, and does not furnish any satisfactory evidence as to his intentions at that time. It is an extrinsic fact, and as far as any inference can be drawn from it, it is met by the other fact which has been alluded to, that at the time the

bequest in question was made, the testator held only $120,000 of the stock mentioned therein.

I think that the construction given to the will at the special term is correct; and that the judgment should be affirmed.

[NEW-YORK GENERAL TERM, October 3, 1853. *Edmonds, Edwards, Mitchell, Roosevelt* and *Morris,* Justices.]