Gridley, J.
 

 (after stating the facts.) — The sole question presented for our consideration is, whether Olive Hall took, under her father’s will, an estate for life, or an estate-tail, changed into a fee-simple by virtue of the statute abolishing estates in tail, passed in 1786.
 

 It is undoubtedly true, as a general rule, that, in the construction of wills, the intention of the testator, as derived from the whole instrument, is the governing principle of interpretation; but this rule is subordinate to another, which is, that where words and phrases have received a fixed legal interpretation, by repeated decisions, such words and phrases, when employed by a testator in his will, are to receive such fixed legal interpretation, as a long series of decisions has attached to them.
 

 The rule in
 
 Shelley's Case
 
 has been abolished by the revised statutes; but as the will in this case took effect before the year 1830, it is to be construed, as the law stood before the enactment of those statutes. The substance of the rule in
 
 Shelley’s Case
 
 (1 Co. 104
 
 a)
 
 is, that “ when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance, an estate is limited, either mediately or immediately, to his heirs, in fee or in tail,
 
 the heirs
 
 are words of limitation of the estate, and not words of purchase.” A similar definition, in substance, is given to this rule by
 
 *400
 
 Mr. Preston, in his elaborate treatise on estates. (See 1 Prest. on Estates 263,
 
 et seq.)
 

 By virtue of this rule, the devise to Olive Hall for life, and to the heirs of her body, and to their heirs and assigns for ever, would create an estate-tail in the said Olive, which the statute aforesaid converted into a fee-simple absolute. *This remainder in tail in the heirs of the body of the said Olive, the law vested in Olive herself, to prevent an abeyance of the inheritance, so that both the estates were vested in the tenant for life. The rule is equally applicable to limitations in wills, as to conveyances by deed, whenever the limitation gives the legal, and not the mere trust or equitable title. The consequence of the application of this rule of construction to the devise in question is, that Olive Hall, being vested with an estate in fee-simple absolute, possessed an unlimited power of alienation, and the heirs of her body could not question the title of him to whom the estate was conveyed. “Heirs of her body” being words of limitation and not of purchase, have no more power to prevent an alienation, than the ordinary words in a conveyance to a man and his heirs have, to prevent a conveyance by a tenant of the freehold, who is the grantee named in the conveyance.
 

 It is true, that there are some exceptions to this rule. The only one, however, to which this case bears any analogy is stated in the following words by Chancellor Kent : “ Where the testator annexes words of explanation to the word
 
 heirs,
 
 as to the heirs of A.,
 
 now living,
 
 showing thereby that he meant by the word heirs, a mere
 
 descriptio personarum,
 
 or specific designation of certain-individuals ; or, where the testator superadds words of explanation, or fresh words of limitation, and a new inheritance is grafted upon the heirs to whom he gives the estate.” (2 Kent’s Com. 221.) In the case under consideration, it will be observed, that the devise gave to
 
 *401
 
 Olive, in terms, an estate for life, with the inheritance to go to the heirs of her body,
 
 and to their heirs and assigns far ever,
 
 and the argument is, that the superadded words “ and to their heirs and assigns for ever,” show that the testator intended, that the heirs of the body of Olive Hall should constitute a new stock of inheritance.
 

 In the case of
 
 Schoonmaker
 
 v.
 
 Sheely
 
 (3 Denio 485), the chancellor, who delivered the prevailing opinion in the court for the correction of errors, considered the effect of a phrase precisely similar. The
 
 habendum
 
 clause of the devise in that case was as follows: “ To have and to hold the said described lots, *&c., unto my said son ^ ^ Benjamin, during his natural life, and after his *- decease, to his heirs, and to their heirs and assigns for ever.” It will be perceived, that the only difference between that case and the one before the court is, that in the former, the first limitation, after the devise to a tenant for life, was to his heirs generally, instead of being to the heirs of his body. In that case, the chancellor, after a full consideration of the question, comes to the conclusion, that the superadded words are not such as to take the devise out of the rule established in
 
 Shelley’s Case.
 
 In
 
 Brant
 
 v.
 
 Gelston
 
 (2 Johns. Cas. 384), the language of the devise was in every material respect like that in the present case; and the principle of
 
 Shelley’s Case
 
 was held to control the construction of the words in that case. So too, the same principle was established in the case of
 
 Barlow
 
 v.
 
 Barlow
 
 (2 N. Y. 386), where the language of the will was substantially like that in the case under consideration. We see, therefore, no reason for departing from a principle so often decided and so perfectly settled in our courts. The judgment should be affirmed.
 

 Judgment affirmed.