Monell, Ch. J.
The plaintiff claims, that as heir at law, of Philip McMff, the elder, she became seized in fee, upon the death of Charlotte, the widow, of one undivided half of the moiety devised to her for life; and as the devise to Philip the younger being without word s of inheritance, conveyed to him, but a life estate in the remaining half, it upon his death, passed to the heirs at law of Philip the elder, namely the plaintiff, and the children of Philip the younger.
The devise to Philip, of the half of the Grand-street lot, and the devise over of the other half, after the death of the widow, being without words of inheritance, the devises, as the law existed before the Revised Statutes, took but a life estate, unless an intention to devise an estate in fee, can be ascertained from other-parts of the will.
The rule which required words of limitation to create a fee, was subservient, to a certain extent, to the intention of the testator, which was to be derived from the whole will. The word “heirs,” or other express words of inheritance, were not required to convey a fee. Other words, denoting an intention to pass the whole interest of the testator, would convey an estate of inheritance (4 Kent Com. 437), and instances stated in his commentaries are, a devise “ to him and his assigns forever,” or, “to him and his blood,” or, “to him and his successors,” and like expressions, may create a fee.
Assuming, therefore, that under the will, Philip the younger took but a life estate in the moiety devised to *87 him, and he, jointly with the plaintiff, a similar estate, in the moiety devised for life to the widow, then, npon the death of Philip (the younger), his estate, which was an undivided half of the whole, descended to his heirs at law, the defendants in this action, and the other half belongs to the plaintiff.
But I am of opinion that Philip, the younger, took an estate in fee, in the moiety devised to him, and that he and the plaintiff also took an estate in fee, jointly as tenants in common, in the other moiety, upon the death of the widow.
An intention to create such an estate in the devisees, is determinable by the will, npon the application of well known rules of construction.
The devise of a moiety to the widow, is expressly for life, and indicates an intention not to create any greater estate in her. It is followed, in the same paragraph, by the devise of the other moiety to Philip. The testator makes no other expressed disposition of the moiety devised to Philip, but expressly disposes of the other moiety, after the decease of his widow ; and declares it to be his wish that such moiety should, upon his death, become the joint property of his son and daughter.
Had the testator gone no further, then, for the want of words of inheritance, the devisees would have taken but a life estate. But the testator proceeds to add words of inheritance, and says, '‘and it is my will and desire, that none of the above mentioned property-should be sold or disposed .of in any way, but pass to the heirs of my children unincumbered.”
These, it seems to me, are sufficient words of inheritance to carry a fee.
The rule in Shelley’s case (1 Coke, 104, a.), is, that where a freehold estate is limited, mediately or immediately, to the heirs in fee, the heirs are words of limitation of the estate, and not words of purchase. Or, as *88 stated by Chancellor Kent (4 Kent Com. 214), the words heirs or heirs of the booty, create a remainder in fee, or tail, which the law, to prevent an abeyance, vests in the ancestor, who is tenant for life, and by conjunction of the two estates, he becomes tenant in fee.
The expressed desire of the testator, that none of the-property should be sold, but that it should all pass to the heirs of his children, applies to, and affects alike, the devise of the moiety to Philip, and the devise over of the other moiety, to Philip and his sister; and under the rule in Shelley’s case, would carry a fee to the respective devisees, the limitation to the heirs general of the testator’s two (and only) children, being an enlargement of their life estate into an absolute fee.
The clause in question in the will, is, therefore, to be-read, as if the testator devised the one moiety to his son for life, and then to his heirs ; and the other moiety, on the death of the widow, to the plaintiff and Philip, as. tenants in common, for life, and then to their heirs; and heirs, as here used, are words of limitation and not of purchase.
Several cases in our courts give a like effect to similar devises.
In Schoonmaker v. Sheely (3 Denio, 485 ; affirming same case, 3 Hill, 165), the devise was to his son Benjamin “ during his natural life, and after his decease to his heirs and their heirs and assigns forever.” The-question was elaborately examined in the supreme court, and in the court of errors, and it was held, that by force of the rule in Shelley’s case, the devise over to the heirs, enlarged the life estate into a fee.
And in Brown v. Lyon (6 N. Y. 419), the devise-was to his daughter “ Olive during her life, and then to descend to the heirs of her body, and' to their heirs, and assigns forever,” and it was held, that by force of ' the word heirs as a limitation over, the tenant for life took a fee.
*89 The rule in Shelley’s case, in an earlier case (Brant v. Provost, 2 J. Cas. 384), was applied to a grant. The conveyance granted the premises to the use of Helena for her life, and then to the heirs of her body. These latter words were held to be words of limitation, creating a fee in the grantee of the life estate.
The rule, however, is not of universal application. There may be superadded words of explanation, indicating another species of heirs, and thereby devising by implication alesser estate (Walker v. Snow, Palm. 359; Lisle v. Gray, T. Raym. 315).
Thus in Archer’s case (1 Coke, 66 b.), the estate was devised for life, and then to the next heir male of his body, and to the heirs male of the body of such next heir male. This was said to be forming a new stock or root of inheritance in the first male heir, and excluding all the other issue male ; and it was held, that the rule was inapplicable.
'The rule itself, and the exceptions to its application, is well stated by Savage, Oh. J., in Rogers v. Rogers, (3 Wend. 503, 511), that when the ancestor takes an estate of freehold with remainder to his heirs, or heirs of his body, the word "heirs,” is a word of limitation of the estate, and not of purchase ; that is, in other words, that such remainder vests in the ancestor himself, and the heir, when he takes, shall take by descent from him, and not as a purchaser. This rule may give way to the manifest intention of the testator, provided that intent be so fully expressed, as to leave no doubt whether it was his intent or not. In that case the devise was to A. B. for life, and after his decease, to the children of his body, followed by an habendum to have and to hold to A. B. for and during his natural life, and after his decease to the children of his body and to their heirs and assigns for ever. And it was held that the habendum controlled the rule of law, and manifested an intention in the testator, of creating *90 a life estate only in A. B., with a fee in the children of his body.
In commenting on this case, Senator Hand says, in Schoonmaker v. Sheely (Ubi sup.), to take a case ont of the rale, some more expressive term must be used than the word “ heirs,” as in Rogers v. Rogers, when the devise over was to the children of his body, an expression which by no means includes the whole line of succession.
And so of Tanner v. Livingston, (12 Wend. 83) the devise over was to the heirs male of the husband and wife, the first takers, and consequently only to a particular class or portion of the heirs, and not descendible to the general heirs.
The cases I have cited were devises for life and remainder to the heirs of the devisee; and under the application of the rule in Shelley’s case,they were held to convey a fee by implication of law.
But it may be said that those cases differ from the one under consideration, in that the testator here has not expressly devised for life, nor is there an express devise over to the heirs.
In respect to the first feature, the difference is immaterial. The same estate passed under this will, that would have passed by an express devise for life. When the will was made, the omission of words of inheritance as a general rule of law, limited the estate to the life of the devisee. And the testator is presumed to have used, or to have omitted to use, words with reference to the existing law, and if he intended to give a life estate only, he accomplished his object as effectually as if he had so expressed it in his will.
In respect to the second point of difference, it is true that it is not an express devise to ‘ ‘ my son and daughter,” and to their heirs, but the interest is conveyed by a wish, that upon the death of his widow, it should become their joint property.
*91 Ho one can doubt that these words are sufficient to convey an estate of some kind to the persons named, and that no more apt words are required. But in employing his words of inheritance, the testator says 11 it is my will and desire,” that the property be not sold, but that it pass to the heirs of my children unincumbered.
It is the duty of courts to effectuate the intention of a testator, if by law it can be done. And in ascertaining such intention the construction which has been put upon like words, and the artificial rules, by which they have been styled and fixed by the authorities are the inflexible guides, where they apply, and, therefore, to quote from Mr. Justice Blaokstone, in Perrin v. Blake, cited in Rogers v. Rogers (ubi sup.), “ the question is not whether he intended his son should have only an estate for life, for he believed there never was an instance where an estate for life was expressly devised to the first taker, that the devisor intended he should have any more. But if he afterwards gives an estate to the heirs of the tenant for life; or to the heirs of his body it is the consequence or operation of law, that in this case supervenes his intentions, and vests a remainder in the ancestor. The true question of intent would turn, not upon the quantity of estate intended to be given to the ancestor, but upon the nature of the estate intended to be given to the heirs of his body. How did he intend the heirs should take ? If as purchasers, that intent should be carried into execution ; if as heirs by descent, or, if he had formed no intention about the matter, then by operation and consequence of law the inheritance vested in the ancestor ; and if the testator had not plainly declared his intent that the heirs should take an estate by purchase and not by descent as heirs, then the rule of the law must operate.”
The words ‘ ‘ and it is my will that it pass to the heirs of my children,” relate to the nature of the estate intended *92 to be given to the heirs, and that they should take by descent and not by purchase; and giving to the words such effect, they became words of inheritance and vest a remainder in the ancestor.
Looking at the will, therefore, in the light of the law as settled in Shelley’s case, I am brought to theconoln sion, that it was the intention of the testator, to give to his devisees estates in fee, and not for life merely ; and looking at it in the light of the manifest intention of the testator, derived from the whole will, it is quite clear, I think, that the testator designed, that the estates of his son and daughter, should not be limited to their lives. Had he intended to give them such a limited estate, he would have said so, as he did in the devise to his widow, which was expressly for life, and would have omitted, what would have been quite unnecessary, the expression of his will and devise, that none of the property should be sold or disposed of, a right beyond the power of a mere tenant for life.
As the contingency of’the death of one of the devisees “ without issue,” has not, and as is admitted, can not, arise, I have not given to that clause in the will, any consideration, as affecting the present estates of the parties to the action. But it serves, I think, to confirm my opinion of the intention of the testator, that his children should take a fee.
The estates of the devisees were of the same duration, nature and quantity of interest, but that did not make them joint tenants. Joint tenancy was abolished in this State as early as 1786, except as to executors and other trustees, unless the estate was expressly declared in the deed or will creating it, to pass in joint tenancy, and there are no words in the will declaring that the estate should so pass in this case. The statute is that it shall expressly be declared to be in joint tenancy (1 Rev. Stat. 54.) Had the devisees been joint tenants, the doctrine of survivorship would have attached, and *93 no words of the testator would have been necessary. So, had he intended to give them a life estate only, the same doctrine of survivorship would have applied. But as the devisees were tenants in common, the doctrine of survivorship did not apply, and a provision for the survivorship became necessary, if one died without issue.
I am, therefore, brought to the conclusion that Philip the younger became seized in fee simple, under the devise to him in the will of his father, of the one equal undivided moiety of the premises in question ; which upon his death, descended to his heirs-at-law ; and that upon the death of Charlotte the widow, the plaintiff and Philip became seized in fee simple, as tenants in common, of the remaining moiety of said premises, and each of one undivided fourth of the whole.
It must, therefore, be declared that the plaintiff is seized of an estate of inheritance in the one equal undivided fourth part of the premises ; and the children of Philip in the remaining three-fourths thereof, or each of two equal undivided sixteenth parts of the whole.
The estate of the children of Philip the younger, is subject to the dower therein of his widow, the defendant Susan McMff.
As her husband was seized of an estate of inheritance in three-fourths of the premises his widow had an inchoate right of dower therein, which upon his death became absolute and complete, entitling her to the use of one-third thereof during life: and to that extent the estate of the children is subject, unless the. provision made for her in the will of her husband, is an equitable estoppel.
The provision made for her, is not declared, to be in lieu of dower, requiring her, under the provisions of the statute (1 Rev. Stat. 741, § 18) to make her election.
There is nothing to show, that the testator intended that the provision should be received in lieu of dower *94 (Jackson v. Churchill, 7 Cow. 287). And to put her to her election, the will must contain provisions, which are wholly inconsistent with her claim of dower in the particular portion of the estate, as to which it is made. (Fuller v. Yates, 8 Paige, 325 ; Irving v. De Kay, 9 Id. 521). And in Lewis v. Smith (9 N. Y. 502), it was held, that in order to compel an election, the devise in the will must be so repugnant to the claim of dower, that they can not stand together.
And even though the specific provisions made for her by the will, exceed the value of her dower, it is no reason for implying, that the testator intended to bar the dower in the residue (Havens v. Havens, 1 Sandf. Ch. 324; Mills v. Mills, 28 Barb. 454).
The widow is also, in addition to her dower, entitled, under the provisions of the will, to the use and occupation of three-fourths of the premises, until Mary, the youngest child, who was twelve years of age on May 5, 1873, shall attain full age.
The value of the interests in money can be ascertained, and if the widow consents to release her dower and accept a sum in gross, her interests can be extinguished.
The parties can prepare findings in conformity with the foregoing conclusions, which may be presented lor settlement, on two days notice to the respective attorneys, and they may then apply for further directions, when the question of costs and allowances will also be determined.