MILLISON A. RIVARD and Others, Appellants, *v.* ANNA MARIA GISENHOF and Others, Respondents.

*Deed — what words create an estate in fee tail — construction of the word "heirs" —*
1 *R. S.*, 722, sec. 3.

The owner of certain real estate conveyed the same by a quit-claim deed, in which Millison Fisher, his mother, and Louisa F. Harvey, his sister, were named as parties of the second part. By the deed the premises were bargained, granted, etc , "unto said party of the second part, to the said Millison during the term of her natural life, and to the said Louisa F., and to her heirs by George S. Harvey, her present husband, forever." By the *habendum* clause the premises were to be held "to the said party of the second part, and the heirs of the said Louisa F. by the said George S. Harvey, her present husband, to the sole and only proper benefit and behoof of the parties of the second part, and the heirs of the said Louisa F. by George S. Harvey, her present husband, forever."

*Held*, that under the deed the mother took an estate for life, and that the daughter took an estate in fee tail, which was by virtue of section 3 of 1 Revised Statutes, 722, converted into a fee simple absolute.

Appeal from a judgment dismissing the plaintiffs' complaint, in an action of ejectment, tried at the Monroe Circuit without a jury.

On the 7th of September, 1853, Augustus N. Fisher was the owner in fee of the premises in question, and, on that day, in consideration of the sum of one dollar, as expressed on the face of the deed, he granted and conveyed the same by quit-claim deed, in which Millison Fisher, who was his mother, and Louisa F. Harvey, who was his sister, were named as parties of the second part, and then follows the provisions of the deed in the following words : " That the said party of the first part, in consideration of the sum of one dollar in hand

paid by the parties of the second part, the receipt whereof is hereby confessed and acknowledged, has bargained, granted, sold, remised and quit-claimed, and by these presents does bargain, sell, remise and quit-claim unto said party of the second part, to the said Millison during the term of her natural life, and to the said Louisa F., and to her heirs by George S. Harvey, her present husband, forever."

The *habendum* clause is in the following words : " Together with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining, and reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title and interest, claim and demand whatsoever of the party of the first part, either in law or equity of, in and to the above bargained premises, with the said hereditaments and appurtenances, to have and hold the said premises to the said party of the second part and the heirs of the said Louisa F., by the said George S. Harvey, her present husband, to the sole and only proper benefit and behoof of the parties of the second part and the heirs of the said Louisa F., by Geoge S. Harvey, her present husband, forever."

At the time of the execution and delivery of this deed, George S. Harvey, the husband, was alive, but died in the lifetime of Louisa F., his wife. The plaintiffs are the children of Louisa F. Harvey, begotten by her husband, the said George S., and were born at the time of the execution of the deed. Millison Fisher and the said Louisa F., both died before the commencement of this action. In her lifetime Louisa F., by warranty deed sold and conveyed the premises to one Frank Gisenhof, under whom the defendants claim title to the premises.

The Special Term held that Louisa F. under and by virtue of the deed took a fee in the land, and that the plaintiffs never had any title or legal interest therein.

*John J. Snell*, for the appellants.

*Jacob Spahn*, for the respondents.

BARKER, J. :

The only question presented on this appeal is this, did the plaintiffs, as the children *in esse* of Louisa F. at the time of the delivery of the deed, take a fee in the whole or any part of the lands con-

veyed. If they did not, then the fee became vested in their mother, the said Louisa F. as the sole owner, and she, by her deed to Frank Gisenhof, conveyed a perfect title, and the defendants being the owners of such title by several *mesne* conveyances were entitled to judgment in their favor dismissing the plaintiffs' complaint. All the parties agree that Millison Fisher took a life estate in the premises and acquired no other interest therein. It is therefore unnecessary to consider whether the *habendum* clause is in any respect repugnant to the premises of the deed, wherein by express terms her interest is described as a life estate.

The plaintiffs' first position is that, by the terms of the deed, Millison Fisher took a life estate with a remainder in fee to their mother Louisa F., and to themselves as tenants in common. The deed conveys a present estate to those who may be held as the grantees therein and no attempt was made to create remainders. The conveyance is *in presenti* and an absolute title in the land vested in the parties of the second part on the delivery of the deed. It is argued in behalf of the plaintiffs that, as they were in being at the time of the delivery of the deed, they are among the grantees named therein, identified by and embraced within the words " and heirs by George S. Harvey, her present husband."

As their father and mother were both living, there were no persons in *esse* who answered to the description of heirs in consequence of the maxim : " No one can be heir during the life of his ancestor." (Broom's Maxims, p. 393.) If, therefore, the deed is susceptible of the construction for which the plaintiffs contend, that it was the intention of the grantor to convey the premises to Louis F., and to them in fee, to be enjoyed after the termination of the life estate in Millison Fisher, it is void for uncertainty so far as those who claim to be included in the term heirs. (30 Washburn Real Prop., vol. 3, pp. 239, 240.) There is nothing on the face of the deed indicating that the grantor intended by the words and phrases used to include among the grantees the children of Louisa F., then in being. If we could say that and hold such to be the intention of the grantor, then the position of the plaintiffs on this point would be entirely sound. Had the husband of Louisa F. been dead at the time of the conveyance, then there would be some reason and authority for saying that the word heirs was used as a mere

*descriptio personarum*, and that the grant was to them and their mother as tenants in common. As the husband was alive and no other words were superadded, indicating that after-born children were intended to be embraced in the word heirs, it would be mere assumption on the part of the court to say that the grantor intended to include them, and manifestly so, as there was a prior life estate to be consumed before those to whom the fee was granted could enter upon the enjoyment of the lands.

It is well established that when the grantees in a conveyance are mentioned and described as the children of "A.," it is sufficiently certain to make the grant valid, for by the use of that term reference is made to a class of persons in *esse*, and they can be identified by proper proof. The case of *Umfreville* v. *Keeler* (1 Thom. & Cook S. C. Rep., 486), to which reference is made by the plaintiff's counsel, is not hostile to the views which we entertain on this proposition and is an authority in support of them. In that case the grantor was the mother-in-law of Elizabeth Umfreville, one of the grantees named in the deed, and Almond, her husband, was then living, and the parties of the second part in the conveyance were mentioned and described as " Elizabeth Umfreville, wife of Almond Umfreville, and her heirs, the children of said Almond Umfreville." The deed did not contain the ordinary *habendum* clause, but purported to be a conveyance of the lands to the " parties of the second part and their assigns forever." It was held, as the term " heirs " and " children " were both used in describing the persons to whom the conveyance was made, the word heirs should be rejected as mere surplusage, and the word children be regarded as a term used to embrace a class of persons well known, the court applying the maxim often used in the exposition of deeds and other writings, that " surplusage does not vitiate that which in other respects is good and valid." (Broom's Legal Maxims, m. p. 486.) The court held that the true construction of the deed included the children of Elizabeth Umfreville, then in being, and that they took as tenants in common with her. In the opinion the court quotes with approbation this rule as laid down by Washburne, that " a deed to the heirs of 'A.,' who is alive, is void unless there is something in the deed itself that shows that by ' heir ' was meant the children of the person named." (Vol. 3, p. 20.)

All the works on the law of tenure unite in this proposition, that *prima facie*, the word 'heir' is to be taken in its strict legal sense; but if there be a plain demonstration in the deed that the grantor used it in a different sense, such different sense may be assigned to it. We see nothing on the face of the deed to enable us to say that the word heirs was not used in its strict technical sense, and have reached the conclusion that the plaintiffs did not take a title in fee as tenants in common with their mother. The plaintiffs also contend if their first proposition is not adopted by the court as the true construction of the deed, then that their mother took only a life estate and that the fee vested in them; that the word 'heirs,' as used in this deed, should be construed as a word of purchase and not of limitation.

In our opinion, by giving the words used by the grantor their well established legal signification, it becomes manifest that he attempted to create in Louisa F. an estate tail, and by force of the statute it is turned into a fee. The provision is: "All estates tail are abolished; and every estate which would be a fee tail, according to the law of this State as it existed previous to July 12, 1782, shall hereafter be adjudged a fee simple; and if no remainder be limited thereon shall be a fee simple absolute." An estate tail is an estate of inheritance which instead of descending to heirs generally goes to the heirs of the donees body, or to him and particular heirs of his body. (1 Washb., 87.) That this conveyance at common law would have created an estate tail in Louisa F., does not admit of doubt. But it is contended by the appellants that, as the grant was to Louisa F., and to particular heirs of her body, those begotten by her then husband, it clearly indicates that the grantor used the word heirs as a word of purchase and not as one of limitation. As the father and the mother were then both living and other children might have been born to them, we think the word heirs was used in its strict technical sense, and would have, if the law permitted the intent of the grantor to prevail, embraced such after-born children as those entitled to share in the inheritance. The word children in its primary and natural sense is a word of purchase, but the word heirs, and heirs of the body are, in their primary and natural sense, words of limitation and not of purchase. (*Schoonmaker* v. *Sheely*, 3 Denio, 490; *In re Sanders*, 4 Paige, 293.)

KENT says the term heir must be used as a mere description of one or more individuals, or a new import given to it by superadded or engrafted words of limitation varying its sense and operation, in order to make it a word of purchase. (Vol. 4, 222.) In this deed no words or phrases are used which can be construed as limiting or qualifying the meaning of the word heirs, so that by fair construction it can be held to be a word of purchase and thereby limit the estate, which Louisa F. took, to a life estate and give to the children the fee.

In *Brown* v. *Lyon* (6 N. Y., 419) lands were devised to Olive Hall, "to have and to hold to the said Olive during her life, and then to descend to the heirs of her body, and to their heirs and assigns, forever;" and it was held that these words would have, but for the statute, created an estate tail, and by force of the statute, the same abolishing all estates tail, Olive Hall, the grantee named, took a fee. So in the case of *Schoonmaker* v. *Sheely* (*supra*), the words used in the *habendum* clause defining the estate of the devisee were "to have and to hold," describing the lands, "unto my said son B. during his natural life, and after his decease to his heirs and to their heirs and assigns, forever," and the same conclusions were reached. That it was the intention of the grantor to create an estate tail in his sister Louisa F. is supported by the following cases: *Grout* v. *Townsend* (2 Denio, 338); *Vanderheyden* v. *Crandall* (Id., 19); *Van Rensselaer* v. *Poucher* (5 Denio, 35); *Lott* v. *Wykoff* (2 Comst., 355); *Barlow* v. *Barlow* (Id., 386); *Seaman* v. *Harvey* (16 Hun, 75); *Coe* v. *De Witt* (22 id., 428).

The judgment should be affirmed.

HAIGHT and BRADLEY, JJ., concurred.

Judgment affirmed.